

**ORDERED in the Southern District of Florida on June 02, 2011.**

Erik P. Kimball, Judge
United States Bankruptcy Court

___

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                          CASE NO.: 08-15917-EPK

**Phoenix Diversified Investment Corp.,**         CHAPTER 7

    Debtor.
_____/

**Kenneth A. Welt, Chapter 7 Trustee of
Phoenix Diversified Investment Corp.,**

    Plaintiff,

v.                                                                  ADV. NO.: 10-03005-EPK

**Publix Super Markets, Inc.,**

    Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS MATTER** came before the Court for hearing on May 31, 2011 upon the *Plaintiff's Motion for Partial Summary Judgment as to Count V of the Complaint* [ECF No. 25] filed by

Kenneth A. Welt, Chapter 7 Trustee of Phoenix Diversified Investment Corp., and the *Defendant's Motion for Summary Judgment on Affirmative Defense One, Statement of Material Facts, and Memorandum of Law in Support* [ECF No. 27] filed by Publix Super Markets, Inc. At the conclusion of the hearing, the Court stated as follows:

> This is the Court's ruling on two pending motions for summary judgment filed in the case of Welt against Publix Supermarkets, Inc., adversary proceeding number 10-3005-EPK.
>
> The motions are: Plaintiff's Motion for Partial Summary Judgment as to Count V of the Complaint, filed at ECF 25; and Defendant's Motion for Summary Judgment on Affirmative Defense One, Statement of Material Facts, and Memorandum of Law in Support, filed at ECF 27.
>
> This adversary proceeding is one of many filed by Kenneth A. Welt, the trustee for Phoenix Diversified Investment Corp. It is alleged that Michael A. Meisner operated a Ponzi scheme through Phoenix Diversified, the debtor in this case. Mr. Meisner is currently incarcerated in federal prison as a result of a criminal conviction relating to his operation of the debtor. Mr. Meisner is also a debtor before this Court. In this ruling, when I refer to the debtor I mean Phoenix Diversified.
>
> On May 8, 2008, the bankruptcy case of Phoenix Diversified Investment Corp. was commenced by the filing of an involuntary petition. This Court entered an order for relief on June 10, 2008.
>
> On September 4, 2009, the United States of America and Mr. Meisner entered into a plea agreement. Attached to the plea agreement is Mr. Meisner's proffer. In the proffer, among other things, Mr. Meisner states that he knowingly, willfully, and with an intent to defraud failed to tell prospective investors in Phoenix Diversified that only a small portion of investor monies was actually used for trading; that the investor monies used for trading maintained a significant loss; that he knowingly, willfully and with an intent to defraud failed to tell potential investors that a large portion of investor monies was not invested but was instead used to make fraudulent, Ponzi-type interest payments to prior investors; and that he knowingly, willfully and with an intent to defraud failed to tell potential investors that a large portion of investor monies was not invested but, instead, was used to support his family's luxury lifestyle. Mr. Meisner proffered that approximately $6.8 million in investor funds was directly paid to or for the benefit of Mr. Meisner and his family.
>
> The defendant, Publix, is in the business of selling groceries and other

2

personal items. During the four year period prior to the petition date, goods were purchased from the defendant using the debtor's check card. Mr. Meisner was an authorized user of the debtor's check card. There is no suggestion that anyone else was an authorized user of the check card. On May 14, 2010, the trustee filed a complaint seeking to avoid and recover all transfers made to the defendant within four years prior to the petition date, in the aggregate amount of $43,384.37.

The complaint contains 6 counts:

Count 1 seeks to recover certain of the transfers under the constructive fraud provisions of section 548(a)(1)(B) of the Bankruptcy Code.

Count 2 seeks to recover the transfers under the constructive fraud provisions of Florida Statutes section 726.105(1)(b).

Count 3 seeks to recover the transfers under the constructive fraud provisions of Florida Statutes section 726.106(1).

Count 4 seeks to recover certain of the transfers under the actual fraud provisions of section 548(a)(1)(A) of the Bankruptcy Code.

Count 5 seeks to recover the transfers under the actual fraud provisions of Florida Statutes section 726.105(1)(a).

Count 6 presents a claim for unjust enrichment.

Federal Rule of Civil Procedure 56(a), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7056, provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. In considering a motion for summary judgment, the court must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party.

The moving party has the burden of establishing that there is an absence of any genuine issue of material fact. Once the moving party meets that burden, the burden shifts to the non-movant, who must present specific facts showing that there exists a genuine dispute of material fact. A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.

Plaintiff requests summary judgment on Count 5 of the complaint. Count 5 seeks to avoid and recover the transfers to the defendant pursuant to section 544 of the Bankruptcy Code and sections 726.105(1)(a) and 726.108 of the Florida

Statutes.

Florida Statutes section 726.105(1)(a) provides, in part: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . With actual intent to hinder, delay, or defraud any creditor of the debtor."

Relying on section 544 of the Bankruptcy Code, the trustee can avoid and recover a fraudulent transfer under this Florida Statute if the trustee proves that the debtor made the transfer of its property within four years prior to the petition date, that the transfer was made with actual intent to hinder, delay, or defraud any creditor of the debtor, and that the debtor has at least one unsecured creditor.

The defendant does not dispute that the transfers alleged in the complaint were transfers of the debtor made within four years prior to the petition date, or that the debtor has at least one unsecured creditor. The sole issue under Count 5 is whether the transfers at issue here were made with actual intent to hinder, delay, or defraud any creditor of the debtor.

Courts have routinely held that where a debtor was involved in a Ponzi scheme, the debtor had actual intent to hinder, delay and defraud creditors. In its summary judgment motion, the plaintiff relies on this so-called Ponzi scheme presumption. The plaintiff argues that Mr. Meisner's plea agreement and proffer, the trustee's affidavit, and the affidavit of the trustee's accountant, together prove that Mr. Meisner was operating a Ponzi scheme through the debtor. Pointing to those cases applying the Ponzi scheme presumption, the plaintiff argues that the debtor had the requisite intent, under section 726.105(1)(a), in making the subject transfers.

The plaintiff overlooks a step in this analysis. In order to apply the Ponzi scheme presumption, the plaintiff must show that the transfers in question where in furtherance of the Ponzi scheme. The existence of a Ponzi scheme supports a finding that the debtor had a generalized intent to defraud. But this is not sufficient, by itself, to show that the transfers in question were made with fraudulent intent. Transfers subject to the Ponzi scheme presumption are those that perpetuate the scheme, or that are necessary to the continuance of the fraudulent scheme. This is the reason that case law applying the Ponzi scheme presumption typically involves claims against investors, brokers, and others who assisted in perpetrating the scheme.

There are several cases holding that the transfers in question must be in furtherance of the Ponzi scheme for the Ponzi scheme presumption to apply. I refer you to Kapila against TD Bank, N.A., In re Pearlman, a 2010 decision of the Bankruptcy Court in the Middle District of Florida, which you can find at 440

B.R. 900. I also refer you to Bear Stearns Securities Corp. against Gredd, In re Manhattan Investment Fund Limited, a 2007 decision of the Southern District of New York, which you can find at 397 B.R. 1. As these decisions make clear, the existence of a Ponzi scheme coupled with transfers by the debtor, without evidence tying the transfers to perpetuation of the scheme, will not implicate the Ponzi scheme presumption.

The plaintiff argues that the debtor purchased groceries from the defendant with debtor funds, knowing it was hindering, delaying, and defrauding creditors because the monies used for the transfers were owed to investors. By extension, the plaintiff is arguing that any transfer of funds by a debtor while the debtor is involved in a Ponzi scheme, other than to repay investors, is subject to avoidance under a theory of actual fraud. This is an unwarranted extension of the Ponzi scheme presumption.

The plaintiff argues that the purchase of goods from the defendant is not in line with the debtor's purported business - commodities and futures trading - and points to the plea agreement where Mr. Meisner admits that debtor funds were used for the benefit of his family. While such evidence may be probative in determining whether the debtor had actual fraudulent intent, these facts alone are not sufficient to support a conclusion of such intent with regard to the specific transfers at issue in this case.

Here, the debtor transferred money to the defendant in exchange for groceries and other personal items. Based on the evidence presently before the Court, the Court cannot find that the purchase of items from the defendant was in furtherance of the alleged Ponzi scheme.

There is a dispute of fact as to whether the transfers to the defendant were made with actual intent to hinder, delay, or defraud creditors. Summary judgment is not appropriate. The plaintiff's motion will be denied.

The defendant filed its own motion for summary judgment on its first affirmative defense. The defendant's first affirmative defense relies on section 548(c) of the Bankruptcy Code and section 726.109(1) of the Florida Statutes.

Section 548(c) of the Bankruptcy Code provides: "Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation."

Section 726.109(1) of the Florida Statutes provides: "A transfer or

obligation is not voidable under s. 726.105(1)(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."

Section 548(d)(2)(A) of the Bankruptcy Code defines the term "value" for purposes of section 548. Among other things, value includes property of any kind. Likewise, section 726.104 of the Florida Statutes provides that property constitutes value, and section 726.102 defines property as anything that may be the subject of ownership.

Both section 548(c) and section 729.109(1) provide an affirmative defense to the recipient of an alleged fraudulent transfer who takes for value and in good faith. Here, the plaintiff concedes that the defendant received the transfers in good faith. The parties dispute whether the defendant gave value in exchange for the transfers.

This dispute focuses on the meaning of the term "value" in the recovery provisions of section 548 and chapter 726 and the meaning of the same term in sections 548(c) and 729.109(1), the defenses presented here. Decisions are nearly universal in holding that the value analysis done in connection with avoidance under section 548(a) of the Bankruptcy Code and the constructive fraud provisions of chapter 726 of the Florida Statutes focuses on benefit actually obtained by the debtor in the transaction. At that stage, value is measured from the debtor's point of view. If the debtor did not actually obtain the requisite value, the transfer is avoidable.

Suppose, for example, a debtor is in the business of manufacturing food products. It has a division that makes breakfast cereal and regularly purchases whole grains, such as wheat. The debtor determines to shut down its breakfast cereal division, thus eliminating its need to purchase wheat. However, the purchasing department is not informed in a timely manner and the debtor orders a substantial amount of wheat, which is delivered. The debtor pays the market price for the wheat. The debtor is unable to use this wheat, which has value to the debtor only to the extent it can be resold. Assume that value is nominal. The actual benefit to the debtor is minimal. If all of the other requisites are proven, the payment for the wheat could be subject to avoidance under the fraudulent transfer provisions of the Bankruptcy Code and Florida statutes.

But the wheat seller in my example, like the defendant here, has defenses. Under the trustee's view, the determination of value is the same for purposes of the defenses as it is in connection with proving the avoidance claim itself. In the context of the defenses, the trustee argues that the court must look to the benefit actually obtained by the debtor. But neither statutory provision supports this argument.

Both section 548(c) and section 729.109(1) are designed to protect the recipient of a potentially fraudulent transfer. In order to prove that a transfer is avoidable, the plaintiff must show that the debtor received less than was given. This analysis is done from the point of view of the debtor. The central question at the avoidance stage is whether the debtor's financial position was harmed by the transaction. The defenses, however, approach the transaction from the point of view of the transferee. These defenses provide a means by which an unwitting seller of goods or services can protect itself. Value is determined from the perspective of the defendant. The question is - how much did the defendant give? The avoidance provisions and these defenses complement each other. The avoidance provisions afford creditors a remedy for the debtor's fraudulent or financially harmful acts. The defenses protect the transferee from its unfortunate selection of business partner.

The Fifth Circuit analyzed exactly this issue in a 2002 decision, Jimmy Swaggart Ministries against Hayes, In the matter of Hannover Corporation, which you can find at 310 F.3d 796. Much of what I have just said on this issue paraphrases the Fifth Circuit decision, which this Court adopts in full for purposes of this ruling. The Fifth Circuit's analysis in Hannover Corporation is congruent with the analysis of section 548(c) in a 2000 decision of the Bankruptcy Court for the Southern District of New York, Balaber-Strauss against Sixty-Five Brokers, In re Churchill Mortgage Investment Corp., which you can find at 256 B.R. 664. It is also consistent with the 11th Circuit's exposition in Orlick against Kozyak, In re Financial Federated Title & Trust, Inc., a 2002 case that you can find at 309 F.3d 1325.

While the Fifth Circuit's decision analyzes section 548(c), specifically, the court's analysis is equally applicable to section 729.109(1) of the Florida Statutes. At least one court has cited the Hannover Corporation decision when construing a provision of state law substantially identical to the Florida law at issue here. I point you to Quad City Bank against Berstler, In re Chapman Lumber Company, a 2007 decision of the Bankruptcy Court in the Northern District of Iowa, which you can find at 2007 Bankr. LEXIS 2702.

The trustee cites a 2006 decision of the Bankruptcy Court in the Middle District of Florida, Keith Eickert Power Products, LLC, against Escada (USA), Inc., which you may find at 344 B.R. 685. This Court declines to follow that decision as it does not properly interpret section 548(c).

In response to the defendant's request for admissions, the trustee admitted that the defendant sold groceries to the debtor. The debtor is a corporation that can act only through agents. Mr. Meisner was the debtor's principal. Mr. Meisner was authorized to use the debtor's check card. There is no evidence to suggest, and neither party has argued, that anyone other than Mr. Meisner was the person who used the debtor's check card to purchase the goods in question. Thus, even

7

absent the trustee's admission, based on the evidence presented the Court must conclude that the debtor bought goods from the defendant. In response to the defendant's request for admissions, the trustee denied that the items purchased constituted value sold or given to the debtor. This is because the trustee believes the goods were ultimately used by Mr. Meisner and his family. The trustee's denial is consistent with the trustee's position that value, in the context of the defense as well as the affirmative claim, means benefit to the debtor.

In light of the law outlined a few moments ago, this is not the correct focus for the defenses presented. The question for this Court is - did the defendant provide goods equivalent in value to the price paid by the debtor? The trustee has not alleged that the debtor overpaid for the goods. The debtor paid for groceries and other items, and the defendant provided them. For purposes of the defenses, the defendant gave full value. The trustee concedes that the defendant acted in good faith. Thus, the defendant has a complete defense under section 548(c) of the Bankruptcy Code and section 729.109(1) of the Florida Statutes.

The Court will grant the defendant's motion for summary judgment on the defendant's first affirmative defense. Counts 1, 4 and 5 of the complaint present claims subject to these defenses.

With the Court having considered the record and being otherwise fully advised in the premises, and for the foregoing reasons as stated on the record at the May 31, 2011 hearing, it is

ORDERED AND ADJUDGED that:

1. *Plaintiff's Motion for Partial Summary Judgment as to Count V of the Complaint* [ECF No. 25] is DENIED.

2. *Defendant's Motion for Summary Judgment on Affirmative Defense One, Statement of Material Facts, and Memorandum of Law in Support* [ECF No. 27] is GRANTED. The defendant has a complete defense to Counts 1, 4, and 5 of the complaint.

###

Copies Furnished To:

Daniel N Gonzalez, Esq
Roberta A Colton, Esq
U.S. Trustee

*Plaintiff's counsel is directed to serve a conformed copy of this Order on all appropriate parties not listed above and to file a certificate of service with the court.*